IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| GREENTEX GREENHOUSES, BV (INC.), | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 05-3058 ) |
| MIDWEST GREENHOUSE, LLC, | ) ) |
| Defendant. | ) |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on Defendant Midwest Greenhouse, LLC's (Midwest) Motion to Dismiss Complaint (d/e 4). Midwest relies on matters outside the pleadings to support its Motion. The Court, therefore, converted the Motion to a motion for summary judgment. Fed. R. Civ. P. 12(b)(6) & 56. Plaintiff Greentex Greenhouses, BV (Greentex) is a corporation organized in the Netherlands. Greentex seeks to recover sums allegedly due for work performed in the construction of a greenhouse (Greenhouse) on real property owned by Midwest located in DeWitt County, Illinois. Midwest asks for summary judgment on the

1

grounds that the obligation to Greentex is not due because it is subordinated to Midwest's obligation to its mortgage lender Commerce Bank N.A. (Bank). Midwest asserts that under the terms of a Subordination Agreement dated June 3, 2003 (Subordination Agreement) between Greentex and the Bank, Midwest cannot pay Greentex at this time, and Greentex cannot accept payment. Midwest further asks for oral argument. The parties have briefed the issues well, and so, oral argument is not necessary. For the reasons set forth below, the Court finds that issues of fact exist regarding whether the Subordination Agreement has effectively suspended Midwest's obligation to pay the funds sought by Greentex. The Motion is therefore denied.

STATEMENT OF FACTS

On February 21, 2003, Greentex and Midwest entered into a contract for the construction of the Greenhouse and related improvements. Complaint (d/e 1), Exhibit A (Construction Agreement). The contract price was €4,129,804.00. As part of the financing for the construction, Greentex agreed to enter into the Subordination Agreement with the Bank. The Subordination Agreement referred to Greentex as "Contractor," and to Midwest as "Borrower." The Subordination Agreement recited that the

2

Bank was providing construction financing and intended to provide long-term financing, referred to as a "Term Loan," upon the completion of the construction. All of Midwest's obligations to the Bank were referred to as "Senior Liabilities" in the Subordination Agreement. The Subordination Agreement stated, in part:

> H. In order to provide for a portion of the amount to become due Contractor under the Construction Agreement to be paid from the proceeds of the Term Loan, Contractor has agreed that of the amount that otherwise becomes due from Borrower to Contractor under the Construction Agreement, the due date for the payment of a total of $1,250,000 (the "Deferred Payment") shall be deferred so as to become due and payable on or after the date of the conversion of the Construction Loan to the Term Loan.
>
> I. The Deferred Payment as evidenced by a Deferred Payment Agreement dated 06-02, 2003, between Borrower and Contractor and may, if not paid by 90 days after the Due Date as defined by the Deferred Payment Agreement, be further evidenced and secured by a mortgage on the Real Estate granted by Borrower to Contractor. The Deferred Payment Agreement and related mortgage are referred to in this Agreement as the "Deferred Payment Documents."
>
> J. The Deferred Payment, together with any interest that may become due under the Deferred Payment Documents, are referred to in this Agreement as the "Subordinated Liabilities." For clarification, the Subordinated Liabilities do not include amounts becoming due Contractor under the Construction Agreement other than the Deferred Payment.
>
> . . . .

2.  <u>Subordination of Payment</u>

(a)  Except as provided in (b), until the date on which the Senior Liabilities have been paid in full, the payment of the Subordinated Liabilities shall be postponed and subordinated to the payment of all of the Senior Liabilities, and Contractor shall accept no payment or other distributions whatsoever (including without limitation distributions of casualty insurance or condemnation proceeds) on account of the Subordinated Liabilities, nor shall any property or assets of Borrower be applied to the purchase or acquisition or retirement of any Subordinated Liabilities.

(b)  The foregoing notwithstanding:

(i)  So long as (A) no notice of default has been given under any documents evidencing or securing the Senior Liabilities (except any such notice of default which has subsequently been waived in writing by the party giving such notice) and (B) upon the conversion of the Construction Loan to the Term Loan, payment of the Subordinated Liabilities may be made and Contractor may accept payment on account of the Subordinated Liabilities, all in accordance with the terms of the Deferred Payment Documents.

(ii)  So long as (A) no notice of default has been given under any documents evidencing or securing the Senior Liabilities (except any such notice of default which has subsequently been waived in writing by the party giving such notice), and (B) in the sole judgment of the Bank, the financial condition of Borrower shall be established from time to time to be sufficient for Borrower to pay without limitation all amounts due under the Senior Liabilities and the Subordinated Liabilities, then Bank shall not unreasonably withhold its consent for Borrower to make payment to Contractor on the Subordinated Liabilities not permitted under subsection (b)(i), provided that no such payment to Contractor shall be permitted

4

so long as Contractor is then in default in the performance of any of its obligations under this Agreement, the Construction Agreement or any other documents executed by Contractor in connection with the Construction Agreement.

Defendant's Memorandum of Law and Support of Motion to Dismiss Complaint (d/e 5) (Defendant's Memorandum), Exhibit A, Subordination Agreement.

Greentex alleges that it performed its obligations under the Construction Agreement to build the Greenhouse and related improvements. Greentex further alleges that Midwest has breached the Construction Agreement by not paying all sums due and owing. Greentex alleges that the outstanding balance is € 373,356.55.

Greentex further alleges that the parties made a second, oral agreement (Oral Contract), for the installation of "an RO Machine, electrical carts and picking carts, and hanging gutter system upon the premises." Complaint, Count II, ¶ 5. Greentex alleges that it performed its obligations under the Oral Contract and demanded payment, and that Midwest breached by failing to pay all sums due and owing. Greentex alleges that € 324,307.80 is due and owing under the Oral Contract. In the alternative, Greentex seeks recovery under a quantum meruit theory for the

5

improvement to Midwest's real estate in the sum of € 697,664.35.

Midwest does not offer any evidence to dispute these allegations for purposes of summary judgment. Rather, Midwest asserts that the Subordination Agreement precludes payment. On December 16, 2004, Scott Swartzendruber, Assistant Vice President of the Bank, sent Greentex a letter which stated:

> Commerce Bank, N.A. ("Bank") hereby notifies you that the Bank has declared an event of default pursuant to the Term Loan documents which are the subject of the Subordination Agreement referred to above . . .
>
> As provided in paragraph 2 of the Subordination Agreement, unless permitted by subsection B of said paragraph 2, payment of the Subordinated Liabilities are postponed until payment in full of the Senior Liabilities. This letter is to notify you that the conditions set forth in subsection B of paragraph 2 of the Agreement that would otherwise permit payments to be made on the Subordinated Liabilities no longer exist, and that all payments on the Subordinated Liabilities should cease and terminate immediately.

Defendant's Memorandum, Exhibit B. Swartzendruber states in his affidavit that the Senior Liabilities have not been paid in full, and the defaults have not been cured. Defendant's Memorandum, Exhibit C, Swartzendruber Affidavit, ¶ 9.

Greentex responds with an affidavit from its International Sales

Director Ludo Van Boxem. <u>Plaintiff's Response to Defendant's Motion for Summary Judgment (d/e 8)</u>, Exhibit D, <u>Van Boxem Affidavit</u>. Van Boxem states that the $1,250,000.00 that comprised the Deferred Payment has already been paid and that the funds currently owing to Greentex under the Construction Agreement are other obligations. <u>Id.</u>, ¶ 7. He further states in his affidavit that these funds owing under the Oral Contract are unrelated to either the Construction Agreement or the Subordination Agreement. <u>Id.</u>, ¶ 6-7. Greentex, therefore, argues that the Subordination Agreement does not apply, and Midwest is obligated to pay Greentex in full.

## ANALYSIS

At summary judgment, Midwest must present evidence that demonstrates the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986). The Court must consider the evidence presented in the light most favorable to Greentex. Any doubt as to the existence of a genuine issue for trial must be resolved against Midwest. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986). Once Midwest has met its burden, Greentex must present evidence to show that issues of fact remain with respect to an issue essential to its case, and on which it will bear the burden of proof at trial. <u>Celotex Corp.</u>, 477 U.S.

7

at 322; <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).

The issue is whether the monies sought by Greentex are not due pursuant to the Subordination Agreement. The Subordination Agreement states that it is governed by Illinois Law. <u>Subordination Agreement</u>, ¶ 9. The interpretation of a contract is a matter of law in Illinois. <u>GNB Battery Technologies, Inc. v. Gould, Inc.</u>, 65 F.3d 615, 621 (7th Cir. 1995). When interpreting a contract, all documents that are entered into simultaneously should be construed together, and the Court must give meaning to all of the stated terms. <u>Id.</u> at 622. Absent an ambiguity, the Court must give effect to the plain meaning of all of the terms of the agreement. <u>Atlantic Mut. Ins. Co. v. Metron Engineering and Const. Co.</u>, 83 F.3d 897, 898 (7th Cir. 1996).

Issues of fact clearly exist regarding whether Midwest is currently obligated to pay Greentex in light of the Subordination Agreement. First, Midwest does not submit any evidence to dispute, for purposes of this Motion, the existence of the separate Oral Contract. Midwest's obligation under the Oral Contract is not subject to the Subordination Agreement. The Subordination Agreement states that Greentex's obligation to

subordinate its debt is limited to a specific payment due under the Construction Agreement defined as the Subordinated Liabilities. Any obligation under the separate, Oral Contract would not be subject to the Subordination Agreement.

Second, Van Boxem states that the Subordinated Liabilities have already been paid, and the sums currently due and owing are different monies due under the Construction Agreement. The Subordination Agreement states that Greentex's subordination obligation is limited to the Subordinated Liabilities, and further states, "For clarification, the Subordinated Liabilities do not include amounts becoming due Contractor under the Construction Agreement other than the Deferred Payment." Subordination Agreement, ¶ J. The Deferred Payment is $1,250,000.00 of the sums due under the Construction Agreement. Id., ¶ H. At this point, the Court cannot determine whether the sums due and owing under the Construction Agreement are the Subordinated Liabilities, or other obligations under the Agreement. The existence of these issues of fact preclude granting summary judgment at this point.

Midwest argues that it cannot pay Greentex because the Bank has instructed it not to do so. The Bank's instruction is only relevant to the

extent the funds owed are Subordinated Liabilities subject to the Subordination Agreement. If the funds owed are not Subordinated Liabilities, then the Bank has no contractual right to instruct Midwest not to pay Greentex, and Midwest will not be in breach for paying such obligations.

THEREFORE, the Motion to Dismiss Complaint (d/e 4) is DENIED.

IT IS THEREFORE SO ORDERED.

ENTER:   December 22, 2005.

    FOR THE COURT:

                                      s/ Jeanne E. Scott
                                    JEANNE E. SCOTT
                      UNITED STATES DISTRICT JUDGE